# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| VERNON CHARLES PATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02438-TLP-tmp |
| v. | ) | |
| | ) | |
| SHELBY COUNTY SHERIFF'S | ) | |
| DEPT., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER DISMISSING AMENDED COMPLAINT, GRANTING LEAVE TO AMEND, DENYING MOTION FOR APPOINTMENT OF COUNSEL, DENYING MOTION FOR TEMPORARY RESTRAINING ORDER, DENYING MOTION TO COMPEL DISCOVERY, DENYING ALL PENDING MOTIONS, AND DENYING NOTICES OF ADDITIONAL CLAIMS, DAMAGES, AND DEFENDANTS

---

Plaintiff Vernon Charles Patton[1] sued pro se under 42 U.S.C. § 1983. [2] (ECF No. 1.) The Court granted him leave to proceed in forma pauperis and assessed the filing fee. (ECF No. 10.) Plaintiff has also moved for discovery (ECF No. 4), appointment of counsel (ECF No. 5), and a temporary restraining order (ECF No. 11). And, he moved to add new defendants (ECF No. 28), correct his complaint and update his pleadings (ECF Nos. 29 & 30), update his damages (ECF No. 31), and dismiss several defendants. (ECF Nos. 15, 27, & 28.)

---

[1] Plaintiff is currently incarcerated at Shelby County Criminal Justice Center ("Jail") in Memphis, Tennessee. His booking number is 17156195.

[2] Plaintiff filed an amended complaint. (ECF No. 22.) The Court construes this as a motion to amend, **GRANTS** the motion, and screens it for PLRA purposes.

What is more, Plaintiff has also filed notices and "supplements" to his claims. These notices primarily seek to add to his claims and damages, as well as add new defendants. (*See* ECF Nos. 7, 8, 13, 14, 16, 17, 18, 20, 21, 24, & 26.)[3]

## BACKGROUND

Plaintiff alleges that Defendants violated his constitutional rights as a pre-trial detainee at the Jail. (ECF Nos. 1 & 22.) He brings claims for: (1) unlawful conditions of confinement; (2) lack of dayroom access; (3) inadequate recreation access; (4) inadequate medical care; (5) punitive segregation; (6) misclassified security status; (7) restricted movement without restraints; and (8) improper housing assignment. (ECF Nos. 1 at PageID 1–3, 7–13, 18–20; 22 at PageID 230–31.)[4] He names as Defendants: Shelby County Sheriff's Department ("SCDC"); Chief Hubbard; Sergeant Richardson; Sergeant Cleaves; Officer Chandler; Officer Johnson; Officer Dance; Officer J. Robertson; Officer Young; Officer Branch; Sergeant Martin; Officer Robinson; Officer Smith; Sergeant Porter; Sergeant Harris; Sergeant Bennett; and Sergeant Woods. (ECF Nos. 1 at PageID 1; 22 at PageID 229.) And, he sues Defendants in both their individual and official capacities. (*Id.*) He seeks declaratory relief, compensatory damages, and punitive damages. (ECF Nos. 1 at PageID 21–26; 11; 22 at PageID 251–53; *see also* the Eleven Notices.)

## LEGAL STANDARD

### I. Screening Requirements Under 28 U.S.C. § 1915A

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[3] The Court collectively refers to these eleven filings as "the Eleven Notices."
[4] Plaintiff filed grievances with the Jail on these claims. (ECF Nos. 1 at PageID 21; 22 at PageID 251; *see also* ECF Nos. 9, 12, & 19.)

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).  And in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

Additionally, Federal Rule of Civil Procedure 8 provides guidance on this issue.  It only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 555.  But it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Id.* at 555 n.3.

Even so, courts screening cases will give slightly more deference to pro se complaints than to those drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  That said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612–13 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for

3

failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))). The Court now discusses the requirements for stating a claim under § 1983.

## II.      Elements of a Claim Under 42 U.S.C. § 1983

Plaintiff sues here under 42 U.S.C. § 1983. To state a claim under that statute, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). For his claims to survive screening, Plaintiff must satisfy these requirements.

## ANALYSIS OF PLAINTIFF'S CLAIMS

## I.      Plaintiff's Official Capacity Claims

The Court treats Plaintiff's official capacity claims as claims against Defendants' employer, Shelby County. *Jones v. Union Cnty., Tenn.,* 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). And courts may hold Shelby County liable *only* if Plaintiff sustained his injuries under an unconstitutional custom or policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This is known as municipal liability.

To show municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the

4

municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1998)

(J., Brennan, concurring) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986)

(emphasis in original)).

But here, Plaintiff does not allege that a Shelby County policy or custom deprived him of

a constitutional right.  He does not allege that any of his claims—such as his unlawful conditions

of confinement claim, recreation deprivation claim, punitive segregation claim, or housing

assignment claim—arose from a County policy.  Instead, his requests for relief are based on his

general allegations about the Jail's deficiencies.  He therefore does not state a claim against

Shelby County or against any Defendants in their official capacity.

## II.      Claims Against the Shelby County Sheriff's Department

Plaintiff names the Shelby County Sheriff's Department ("SCSD") as a Defendant.  (ECF

No. 22 at PageID 229.)  The Shelby County Sheriff's Department, however, "is not a suable

entity under Tennessee law."  *Boyd v. City of Millington*, No. 15-2642-SHL-cgc, 2015 WL

13080882, at *1 (W.D. Tenn. Dec. 9, 2015).  Plus, the Sixth Circuit has held that "[s]ince the

[p]olice [d]epartment is not an entity which may be sued, [the] [c]ounty is the proper party to

address the allegations of [the plaintiff's] complaint.'"  *Matthews*, 35 F.3d at 1049.

And so, because the "Shelby County Sheriff's Department is not a legal entity separate

from Shelby County, Tennessee," Plaintiff cannot sue SCSD.  *See Hargrow v. Shelby Cnty.*,

*Tenn.*, No. 13-2770, 2014 WL 3891811, at *1 n.1 (W.D. Tenn. Aug. 7, 2014*); see also Duck v.*

*Madison Cnty. Sheriff's Dep't*, No. 1:17-cv-01043-JBD-egb, 2018 WL 2966950, at *3 (W.D.

Tenn. June 13, 2018).  The Court thus **DISMISSES** Plaintiff's claims against SCSD.

III.    **Plaintiff's Eighth Amendment Claims**

    A.    **Conditions of Confinement Claims**

       Plaintiff alleges that these conditions of his confinement were unconstitutional: Defendants only let him out of his cell for an hour a day; the Jail's entertainment facilities only had a chair and wall-mounted television behind dirty plexiglass; Defendants only allowed 15 minutes for showers; and Defendants made him eat and "perform personal grooming" in his cell. (ECF No. 22 at PageID 236.)  He further claims that the Jail's "24-hour lighting policy facilitates punishment without due process."  (ECF No. 22 at PageID 236 & 249–50; *see also* ECF No. 1 at PageID 3 & 20.)  And, he alleges that Defendants disturbed him while he was sleeping, and that they did so in retaliation for Plaintiff filing grievances.  (*Id.*)

       The Court construes Plaintiff 's conditions of confinement claims under the Eighth Amendment.  *See generally Wilson v. Seiter*, 501 U.S. 294, 296 (1991).  The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  *Id.* This means that prison officials must provide inmates with humane conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  And so, prison officials must give inmates adequate food, clothing, shelter, and medical care.  *See id*. at 347–48.

       But "[e]xtreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id.* (internal quotations and citations omitted).

       The Sixth Circuit has further explained:

In certain extreme circumstances, the totality itself may amount to an [E]ighth [A]mendment violation, but there still must exist a specific condition on which to

base the [E]ighth [A]mendment claim.  We believe such conditions considered alone or in combination [with other conditions], must amount to a deprivation of life's necessities, before a violation of the [E]ighth [A]mendment can be found. . . . [A] specific deprivation of one or more identifiable human needs must be established in order to prove an Eighth Amendment violation, [and] the plaintiff must show "a culpable state of mind on the part of [the defendant] prison officials.

*Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9–10 (6th Cir. Aug. 6, 1991) (internal quotations and citations omitted); *see also Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir. 1985).  "It is thus settled that Eighth Amendment claims based on prison conditions have both an objective component (denial of . . . 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')."  *Id.* at *10 (internal citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious."  *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8–9; *Wilson*, 501 U.S. at 928.  A prisoner has to allege that he "is incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005).  Or, he has to allege that the defendant deprived him of the "minimal civilized measure of life's necessities."  *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that jail officials acted with intent—that they had a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).  Under this requirement, a plaintiff must show that a prison official subjectively knows of an excessive risk of harm to an inmate's health or safety and chooses to disregard that risk.  *Farmer*, 511 U.S. at

837; *Wilson*, 501 U.S. at 302–03 (finding that plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm).

      Plaintiff cannot prove either the subjective or objective component here.  His complaints about the Jail's entertainment options, meal practices, and self-grooming arrangements do not meet the "extreme deprivation" standard.  For example, Plaintiff does not claim that Defendants denied him a life necessity, such as food or water.  And the complaint does not lead the Court to plausibly infer that the Jail's lighting hours and inmate-checks were anything other than reasonable safety measures.  *See, e.g., Martin v. Wayne*, No. 1:16-cv-1314, 2019 WL 2619353, at *9 ("It is not cruel and unusual punishment for a jail to leave dimmed lights on during the night" because "[s]uch a policy is reasonably related to the security of the jail."); *Argo v. Gobble*, No. 1:10-cv-227, 2011 WL 2181956, at *7 (E.D. Tenn. June 3, 2011).  What is more, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

      Plaintiff here has not identified any basic human need that the Jail denied him for an unreasonable period of time.  As a result, he fails to satisfy the Eighth Amendment's objective prong.  Plus, he does not allege enough to satisfy the Eighth Amendment's subjective component either.  For example, he does not allege that any Defendant had subjective knowledge of, and disregarded, an excessive risk of harm to his health or safety.  Nor is there anything in the record

from which the Court can infer that any Defendant displayed deliberate indifference to a substantial risk that he would suffer serious harm from the alleged conditions.

For all of these reasons, Plaintiff fails to state a claim based on conditions of confinement.

### B. Recreation Deprivation Claim

Plaintiff also alleges that Defendants denied him access to outdoor recreation. (ECF Nos. 22 at PageID 241–43; 1 at PageID 2.) But he does not allege when the Jail restricted his access to outdoor recreation, or for how long. Instead, he says his recreation allotment was "inadequate." (ECF No. 1 at PageID 2.) He also suggests that Defendants gave other inmates more recreation time. (ECF No. 22 at PageID 235.)

Plaintiff's recreation deprivation allegations also fall under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Wilson*, 501 U.S. at 304–05. The Sixth Circuit has recognized that prisoners are entitled to enough outdoor recreation to maintain reasonably good physical and mental health. *See Walker*, 771 F.2d at 927. And the Sixth Circuit has held only that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). But "there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners." *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)).

Here Plaintiff does not allege when or for how long that Jail restricted his access to outdoor recreation.  As a result, he does not sufficiently allege a total or near-total deprivation of recreational opportunity, and so he fails to state a claim for relief.

### C.      Dayroom Denial Claim

Plaintiff alleges that Defendants denied him access to the Jail's dayroom.  (ECF Nos. 22 at PageID 241–43; 1 at PageID 2.)  This claim similarly fails.  He does not allege how long the Jail denied him access to the dayroom.  Nor does he allege that his inability to use the dayroom affected his health, safety, or other basic necessities.  In the end, his claim does not amount to a constitutional violation.

What is more, it is not enough that Plaintiff may have missed social activities that took place in the dayroom.  The Eighth Amendment's prohibition against cruel and unusual punishment protects a prisoner from conditions of confinement that constitute threats to his health, not those that cause mere discomfort or inconvenience.  *See Powell v. Washington,* 720 F. App'x 222, 228 (6th Cir. 2017) ("Allegation of temporary inconveniences are insufficient to state a claim."); *Fitzpatrick v. Marshall Cnty. Jail,* No. 3:20-cv-00206, 2020 WL 5530138, at *3 (M.D. Tenn. Sept. 15, 2020) (finding that "[a]n inmate's constitutional rights are not violated by exposure to conditions of confinement that amount to 'no more than temporary inconveniences' that are 'not extreme'" (quoting *Powell*, 720 F. App'x at 228)).

In sum, Plaintiff fails to state a claim for relief related to dayroom access.

### D.      Inadequate Medical Care Claim

Plaintiff claims that Defendants refused to provide him with a therapeutic pillow (or an extra blanket) for a neck injury caused when officials put him in handcuffs.  (ECF Nos. 1 at PageID 3; 22 at PageID 245–46.)  He alleges that "[c]ustody staff have confiscated my extra

blanket as contraband in cell searches even with the knowledge of my medical prescription." (ECF No. 1 at PageID 18.)  He further states that Defendants refuse to install an electronic kiosk in his pod to record inmates' medical care requests.  (ECF Nos. 1 at PageID 3 & 19; 22 at PageID 246.)

The Court reviews Plaintiff's inadequate medical care claims under the Eighth Amendment.  *See generally Wilson*, 501 U.S. at 297.  And under *Estelle v. Gamble*, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  That said, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  To state a viable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.

And in the context of inadequate medical care claims, the Eighth Amendment's objective component requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895–97 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 127–28 (6th Cir. 1994).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'"  *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  And so, "[n]ot 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'"  *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

What is more, in the medical care context, the Eighth Amendment's subjective component requires that jail officials act with the requisite intent——with deliberate indifference. *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302–03 (finding that plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez*, 555 F.3d at 550. Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Plaintiff's claim that the Jail refused to give him a therapeutic neck pillow fails to state a claim for inadequate medical care under the Eighth Amendment. While a neck injury may be a serious medical need, Plaintiff does not provide the Court with any basis to find that here. For example, he does not describe his neck condition or any diagnosis. Plus, he does not allege that the Defendants had a "sufficiently culpable state of mind" or that they acted with "deliberate indifference." *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302–03. In fact, Plaintiff explains that Defendants confiscated his original pillow as contraband. (ECF No. 22 at PageID 245.) And this suggests that Defendants had a legitimate safety reason for confiscating the pillow, undermining any inference that Defendants deliberately denied him a second pillow in order to cause him neck pain. Based on the complaint, the Court cannot reasonably infer that Defendants acted with a culpable state of mind.

Plaintiff's allegations about the lack of a pod kiosk also fail. (ECF Nos. 1 at PageID 19; 22 at PageID 246.) He alleges that "[t]he lack of a pod kiosk places the inmates housed in First Floor B Pod in particular danger of arbitrary and capricious singling-out as the very staff who seem to be causing harsh and unconstitutional conditions of confinement are our only link to

services like mental health assistance, medical assistance, religious assistance, notary service, commissary purchases, etc." (*Id.*) But Plaintiff does not have standing to bring this claim.

To show standing, "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). And the particularized injury requirement means "that the injury must affect the plaintiff in a personal and individual way." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted).

And so, unless Plaintiff suffered an actual injury because his pod did not have a kiosk, he lacks standing to sue. But Plaintiff does not allege that Defendants personally injured him by failing to provide a pod kiosk. Also he lacks standing to bring claims on behalf of any of the other inmates. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001) (finding plaintiff lacked standing where his allegations "involved actions taken against other prisoners").

For these reasons, Plaintiff fails to state a claim for inadequate medical care.

### E.    Claims of Punitive Segregation, Wrongful Security Classification, Restricted Movement, and Improper Housing Assignment

Plaintiff alleges that Defendants violated his liberty interests by imposing "punitive pretrial conditions of confinement" without a legitimate penological interest. (ECF Nos. 1 at PageID 6–7, 10, & 13; 22 at PageID 237–39.) He claims that Defendants punitively segregated him and misclassified his security level and housing assignment. (ECF Nos. 1 at PageID 6–7, 19–20; 22 at PageID 237–39, 247–48). And he claims that Defendants: harassed and provoked him into misbehaving, in order to justify his "punitive housing assignment" (ECF No. 22 at PageID 239–40); refused "to allow freedom of movement (without handcuffs and shackles)

when called to Court or to sick-call" (*Id.* at PageID 231); and wrongfully placed aggressors in Plaintiff's cell.[5]  (ECF Nos. 1 at PageID 13–14; 22 at PageID 243–45.)

All of these allegations fail to state a claim for relief, as the Court does not have the authority to supervise the classification and housing assignment of inmates.

First, prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment.  *See Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002) ("[A] prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification."); *see also Sandin v. Conner*, 515 U.S. 472, 484–87 (1995); *Olim v. Wakinekona,* 461 U.S. 238, 245–46 (1983); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004).  Plus, because "maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures."  *Hayes v. Tennessee*, 424 F. App'x 546, 550 (6th Cir. 2011).  What is more, courts "have deferred to judgments of prison officials in upholding these regulations against constitutional challenge."  *Id.* (citing *Shaw v. Murphy*, 532 U.S. 223, 229 (2001)).

Even liberally construing Plaintiff's allegations that the Jail misclassified his security-level and housing assignment, he does not state a claim for relief.  To bring a Fourteenth Amendment due process claim, a plaintiff must allege that the state interfered with a constitutionally cognizable liberty or property interest.  *Ky. Dep't of Corrs. v. Thompson*, 490

---

[5]  Plaintiff alleges that although he complained to Defendants about gang harassment under the Prisoner Rape Elimination Act, the Jail relocated an offender-inmate to Plaintiff's pod.  (ECF No. 1 at PageID 13–14.)  Plaintiff does not, however, allege that Defendants harmed him or threatened him with imminent danger.  Instead, he claims that the offender's relocation "should shock the conscience of any decent human being."  (*See* ECF No. 1 at PageID 14.)

U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993).  But for a prison restriction to infringe on a protected liberty interest, it must create an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).

Confinement to disciplinary segregation, the loss of package privileges, fines, and restrictions on unrestrained inmate movements generally do not qualify as atypical and significant hardship in the context of prison life.  *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986))*; see also Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (finding that "a prisoner does not have a constitutional right to be placed in a specific security classification").  And Plaintiff cites no authority establishing a liberty interest in unrestricted freedom of movement inside correctional facilities.  *See Sandin*, 515 U.S. at 484.  This lack of authority is not surprising.  Indeed, "[i]t goes without saying that prisoners may be restrained."  *McKinney v. Compton*, 888 F. Supp. 75, 76 (W.D. Tenn. 1995) (quoting *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982)).

Second, Plaintiff's allegation that Defendants wrongfully reassigned a past-aggressor to his pod does not state a claim for a constitutional deprivation.  Even giving due deference to Plaintiff's allegations, these claims essentially amount to a claim that, by failing to adequately protect him, Defendants were deliberately indifferent under the Eighth Amendment's prohibition of cruel and unusual punishment.  *See Farmer*, 511 U.S. at 832–33, 847 (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates," and a prison official is liable under the Eighth Amendment for failure to protect "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"); *see also Estelle*, 429 U.S. at 104–05.  In the end, Plaintiff has

15

not offered facts showing that he "is incarcerated under conditions posing a substantial risk of serious harm," or that any Defendant had a sufficiently culpable state of mind when placing the other inmate in Plaintiff's pod.  *Farmer*, 511 U.S. at 834.

For all these reasons, Plaintiff fails to state a claim for relief regarding his punitive segregation, security classification, restricted movement, and housing assignment claims.

## IV.   Inadequate Grievance Procedure Claim

Plaintiff alleges that he submitted grievances about all these claims.  (ECF Nos. 1 at PageID 1–2; 22 at PageID  251.)  But he does not allege that Defendants arbitrarily denied him access to the Jail's grievance procedures.  And so, it is not clear whether Plaintiff seeks to sue based on the denial of his grievances.

Prisoners do not have a constitutional right to a prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001*)* (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective grievance procedure.").  Even if Plaintiff had a constitutional right to a grievance system, he has not shown that any particular Defendant affected his "ability to bring his claim before any court."  *See Coleman v. Governor of Mich.*, 413 F. App'x 866, 874–75 (6th Cir. 2011) (citation omitted).  Plus, "the denial of an [inmate grievance] appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation." *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003)*; George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

In the end, if Plaintiff seeks to sue based on the denial of his grievances, he does not state a claim.

## V.      Plaintiff's Claim That Officials Failed to Observe Jail Policies

Plaintiff's complaint alleges that Defendants acted with a "total disregard" for the Jail's policies—although he does not identify any specific policies.[6]  (ECF No. 1 at PageID 1.)

An allegation that prison officials failed to follow administrative policies does not necessarily rise to a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  This is because mandatory language in a prison regulation does not create a liberty interest protected by the Due Process Clause.  *Sandin*, 515 U.S. at 484; *see also Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 229–30 (W.D. Tenn. 1999) ("[L]anguage in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause." (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995))).  Also § 1983 does not provide a remedy for violations of state laws or regulations.  *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate"*); see also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding that violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).

---

[6] He does not make this allegation is his amended complaint.  But because the Court finds that he does not state a claim to relief, this discrepancy does not change the Court's screening of Plaintiff's complaint.

All in all, Defendants are not constitutionally required to follow the Jail's administrative policies. *See Sandin*, 515 U.S. at 484. And so Plaintiff's claim fails to allege a constitutional violation. The Court therefore finds that Plaintiff fails to state a claim here.

## VI.   Plaintiff's § 1985 Claims

Plaintiff next brings claims under 42 U.S.C. § 1985(2) & (3). (ECF No. 22 at PageID 229.) He alleges that Defendants conspired to violate his First Amendment right to file grievances. (ECF Nos. 23 at PageID 256; 26 at PageID 274.) His allegations, however, do not state a claim for relief under this statute.

Subsection 1985(2) contains two separate clauses. The first "forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 497 (6th Cir. 2004). But this clause does not apply here, because Plaintiff does not allege that the Defendants tried to prevent or to deter him from attending or testifying in federal court.

The second clause of the subsection "applies to conspiracies to obstruct the course of justice in state courts." *Bragg v. Madison*, 20 F. App'x 278, 285 (6th Cir. 2001) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). This subsection does not apply to Plaintiff's claims either. Plaintiff does not allege that Defendants tried to obstruct justice in state court. And so Plaintiff does not state a claim under subsection 1985(2).

As for Subsection 1985(3), it "applies to conspiracies for the purpose of depriving, directly or indirectly, a person . . . of the equal protection of the laws." *Bragg*, 20 F. App'x at 285 (internal citation omitted). To state a claim under § 1985(3), however, Plaintiff "must demonstrate that there was 'some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Kush*, 460 U.S. at 726); *see also Vakilian v. Shaw*, 335 F.3d 509, 519 (6th Cir. 2003) (noting that "[a] class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender" (quoting *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994))).

Plaintiff argues that he is "a member of an easily identifiable 'class of persons' in pretrial detention and in jail uniforms." (ECF No. 23 at PageID 258.) But the Sixth Circuit holds otherwise. It "has interpreted § 1985(3) to hold that the class of individuals protected by the equal protections of the laws' language of § 1985(3) are those so-called discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 2F.2d 218, 224 (6th Cir. 1991). And "prisoners are not members of a protected class for equal protection purposes." *McGaughy v. Johnson*, 63 F. App'x 177, 178 (6th Cir. 2003). As a result, they are not members of a protected class under § 1985(3) either.

In the end, Plaintiff has not alleged a violation of § 1983(2) or (3). Plaintiff therefore does not state a claim under this statute.

## VII.    Motion to Appoint Counsel

Plaintiff also moves to appoint counsel. (ECF No. 5 at PageID 116.) Under 28 U.S.C. § 1915, the "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). But "the appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993*)

(finding that there is no constitutional right to counsel in a civil case).  Appointment of counsel is thus "a privilege that is justified only by exceptional circumstances."  *Lavado,* 992 F.3d at 606 (internal quotation marks and citation omitted); *Lanier*, 332 F.3d at 1006.

When determining "whether exceptional circumstances exist, courts have examined the type of case and the abilities of the plaintiff to represent himself."  *Id.* at 606 (internal quotation marks and citations omitted).  "This generally involves a determination of the complexity of the factual and legal issues involved."  *Id.*  What is more, appointment of counsel is not appropriate when a pro se litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (quoting *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985))*; see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).

Plaintiff argues that his "pretrial detention will greatly limit [his] ability to litigate, coordinate discovery, serve legal process, contact and present expert witnesses, present evidence, effectively conduct research, and investigate diligently."  (ECF No. 5 at PageID 116.)  But this is not an "exceptional circumstance" justifying the appointment of counsel.  The Court therefore **DENIES** his motion for counsel.

## VII.    Motion for a Temporary Restraining Order

Plaintiff moves for a temporary restraining order ("TRO Motion").  (ECF No. 11.)  He seeks to restrain "all Shelby County Sheriff's Office employees, officers, agents, and attorneys" from restricting his use of the dayroom and limiting his indoor and outdoor recreation.  (*Id*. at PageID 146–47.)  He also seeks injunctive relief giving him the right to permanent use of a medical prescription pillow; a pod kiosk; and undisturbed sleep and lights-out in his cell between 10:00 p.m. – 6:00 a.m. daily.  (*Id.*)  Plus, he asks that Defendants change his security classification from Level 8 to Level 7.  (*Id.*)  Plaintiff argues that this relief "is absolutely

necessary to prevent a wholesale campaign of retaliation" and that "[t]hese dangers are too imminent and too likely to occur for the relief requested to wait until a hearing in this matter." [7] (*Id*. at PageID 147.)

The moving party has the burden of proving that the circumstances "clearly demand" a temporary restraining order or preliminary injunction. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to issue a temporary restraining order or preliminary injunction, a district court must consider these four factors: "(1) whether the claimant has demonstrated a strong likelihood of success on the merits, (2) whether the claimant will suffer irreparable injury in the absence of a stay, (3) whether granting the stay will cause substantial harm to others, and (4) whether the public interest is best served by granting the stay." *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007)*; see also Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006*)* (same).

In fact, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573; *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (finding that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

All factors weigh against granting injunctive relief in this case. Plaintiff's TRO Motion repeats the same claims that are in his complaint and amended complaint. And as this order explained in detail above, Plaintiff fails to demonstrate a strong likelihood of success on the

---

[7] Plaintiff's original complaint made similar allegations. (ECF No. 1 at PageID 21) (referring to the "ongoing nature" of the alleged constitutional violations, and claiming that, "without federal court intervention these violations will continue and future harms will be inflicted"). But Plaintiff's amended complaint removed his injunctive relief claims, and he asserted them separately in his TRO Motion. (*See* ECF No. 22 at PageID 227.)

merits for any of those claims.  Because "the likelihood of success on the merits often will be the determinative factor" as to temporary injunctive relief, this factor weighs heavily against Plaintiff.  *See Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

Also the hallmark of injunctive relief is the likelihood of irreparable harm.  *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (finding that "[t]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction").  But Plaintiff's claims do not allege an urgent unconstitutional physical harm or long-term injury. Thus, he has not shown a likelihood of irreparable harm.  What is more, Plaintiff does not address whether the preliminary injunction would harm others or whether the public interest is best served by granting his motion.

With all this in mind, the Court finds that the factors weigh against granting Plaintiff's motion for injunctive relief.  Plaintiff has not shown that the "circumstances clearly demand" a preliminary injunction here.  *See Overstreet*, 305 F.3d at 573.  The Court thus **DENIES** Plaintiff's TRO Motion.

IX.    **Motion to Compel Discovery**

Plaintiff also moves for discovery.  (ECF No. 4.)  He seeks audio and video footage from the Jail's security cameras, along with the Jail's "arrest, detention, and release data required to calculate" (1) "the average length of confinement of pretrial detainees over the last 5 years," (2) "the amount of outside recreation offered to said inmates" and (3)  "the cell size in . . . [a]dmin[istrative] seg[regation]."  (*Id.* at PageID 102–03.)

But Plaintiff must serve discovery requests according to the Federal Rules of Civil Procedure, and not by court order.  *See*, *e.g.*, Fed. R. Civ. P. 34 ("A party may serve on any other

party a request . . . to produce . . . any designated documents or electronically stored information"). And to serve discovery requests, he must state a claim for relief that survives the Court's screening. If Plaintiff states a plausible claim for a relief, Plaintiff's claims will move beyond screening and he can seek discovery from Defendants. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (finding plaintiff that stated a plausible claim for relief "deserves a shot at additional factual development, which is what discovery is designed to give him.") (quoting *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010)). But at this time, the Court finds that he does not state a claim for relief, and his claims will not move past screening. So discovery is premature.[8]

The Court therefore **DENIES** Plaintiff's motion for discovery.

## X.    Plaintiff's Eight Motions

Plaintiff also filed the following motions in this case ("the Eight Motions"):

(1) a motion seeking to remove Officer Robinson and Officer Smith as defendants and to modify his damages calculations (ECF No. 15 at PageID 184–85);

(2) a motion to "submit specified pleadings pursuant to [his] § 1985 claims" (ECF No. 23);

(3) another motion to "further enunciate the specified pleading requirements needed to properly plead [his] § 1985(2) and (3) claims" (ECF No. 25 at PageID 270–72);

(4) a motion to remove Sergeant Woods as a defendant in this case (ECF No. 27 at PageID 279);

(5) a motion to (a) "extend the complaint's 1st Amendment claims to Defendants Chief Hubbard, Sergeant Richardson, Sergeant Cleaves, and Officer Dance"; (b) add to his grievances claims; (3) remove Sergeant Harris as a Defendant; and (4) update Plaintiff's damages demand (ECF No. 28 at PageID 281–84);

---

[8] There is also nothing in the record suggesting that Plaintiff served any discovery requests on any Defendant. So if Plaintiff seeks to compel discovery, there is no discovery response that the Court can compel from any Defendants at this time.

(6) a motion to (a) add that Defendants retaliated against him because he filed grievances; (b) clarify his First and Fourteenth Amendment retaliation claims (c) remove Sergeant Bennett as a Defendant; (d) add "the disciplinary panel members" as Defendants; and (e) amend his damages claims (ECF No. 29 at PageID 288–92);

(7) a motion to (a) add as Defendants Sergeant Porter, Officer Bass, and the three other members of the disciplinary panel; (b) address § 1985's "similarly situated persons" requirement; and (c) update Plaintiff's damages demand (ECF No. 30 at PageID 294–97);

(8) another motion to update his damages claims (ECF No. 31 at PageID 299).

Because the Court dismisses Plaintiff's amended complaint for failure to state a claim, the Court **DENIES** his Eight Motions (ECF Nos. 15, 23, 25, 27, 28, 29, 30 & 31) as moot.

For the same reason, if Plaintiff intended for one or more of his Eleven Notices to amend his claims, his damages, or the named Defendants to this lawsuit, the Court **DENIES** the Eleven Notices (ECF Nos. 7, 8, 13, 14, 16, 17, 18, 20, 21, 24, and 26) as moot.[9]

## AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In fact, the Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019). And the Court has also stated "[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend." *Id.* (quoting *Brown*, 415 F. App'x at 614).

Here, the Court finds that Plaintiff should have the opportunity to amend his complaint. And so it **GRANTS** Plaintiff leave to amend. Plaintiff must file any amendment to his claims on the proper form within thirty (30) days of this order. The Court reminds Plaintiff that an

---

[9] If he wishes, Plaintiff may amend his complaint and resubmit the portions of his Eight Motions and Eleven Notices, under the strict guidelines the Court addresses below.

amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings.  Plaintiff must sign the amended complaint, and the text of the amended complaint must allege enough facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.

What is more, all claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Plaintiff wishes to add any of the people or claims that he described in his Eight Motions (ECF Nos. 15, 23, 25, 27, 28, 29, 30 & 31) or Eleven Notices (ECF Nos. 7, 8, 13, 14, 16, 17, 18, 20, 21, 24, & 26), he must include each person and/or claim in his amended pleading.

The Court further reminds Plaintiff that it cannot create or recharacterize his claims for him.  *See Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants" because "[n]ot only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party").  What is more, "federal district court judges have no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 226 (2004).  And yet, that is effectively what Plaintiff's Eleven Notices and Eight Motions call upon this Court to do.

His many filings contain confusing lists of defendants, damages, factual allegations, and legal claims—which are often internally inconsistent or contradictory.  And this Court has no duty to piece together Plaintiff's filings to determine precisely what he is trying to claim, against whom, and for what relief.  Under the Federal Rules of Civil Procedure, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). And Plaintiff's countless filings clearly have not done so here.

To this end, the Court advises Plaintiff that the Court grants him only <u>one</u> opportunity to amend his claims at this time. Plaintiff should include his amended claims in a document titled "Second Amended Complaint" and file them in <u>one</u> document. And he must do so within thirty (30) days of the entry of this order. The Court may dismiss any notices, motions, attachments, "additions," or "omnibus pleadings" that Plaintiff files beyond his one all-inclusive "Second Amended Complaint."

If Plaintiff fails to amend his complaint, the Court will assess a strike under 28 U.S.C. § 1915(g) and enter judgment for Defendants.

<u>**CONCLUSION**</u>

For all the reasons explained above, the Court **DISMISSES** the amended complaint **WITHOUT PREJUDICE** for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1). (*See* ECF No. 22.) But the Court **GRANTS** Plaintiff leave to amend.

The Court also **DENIES** Plaintiff's requests for declaratory relief (ECF Nos. 1 at PageID 21–22; 22 at PageID 251) as moot because the Court is dismissing his claims. The Court further **DENIES** Plaintiff's motion to compel discovery (ECF No. 4), motion for appointment of counsel (ECF No. 5), and motion for a temporary restraining order (ECF No. 11). Also, the Court **DENIES** Plaintiff's Eight Motions (ECF Nos. 15, 23, 25, 27, 28, 29, 30 & 31) and Eleven Notices (ECF Nos. 7, 8, 13, 14, 16, 17, 18, 20, 21, 24 & 26) as moot.

**SO ORDERED**, this 18th day of February, 2021.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE