IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| VERNON CHARLES PATTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-02438-TLP-tmp |
| v. ) | |
| ) | |
| SHELBY COUNTY SHERIFF'S DEPT., et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

**ORDER MODIFYING THE DOCKET, DISMISSING THE SECOND AMENDED COMPLAINT IN PART AND PROCEEDING IT IN PART, DENYING LEAVE TO AMEND, DENYING IN PART AND GRANTING IN PART MOTION TO SERVE PROCESS, AND DENYING ALL OTHER PENDING MOTIONS**

In February 2021, the Court screened pro se Plaintiff Vernon Charles Patton's 42 U.S.C. § 1983 claims ("Screening Order") under the Prison Litigation Reform Act, 28 U.S.C. § 1915A(b). (ECF No. 34.) The Court dismissed his complaint for failure to state a claim but granted him leave to amend. (*Id*.) As a result, Plaintiff filed a second amended complaint ("SAC"). (ECF No. 35.)

Like Plaintiff's first pleadings, the SAC names as Defendants Sergeant Richardson, Sergeant Cleaves, Officer Chandler, Officer Johnson, Officer Dance, Officer J. Robertson, Officer Young, Officer Branch, Sergeant Martin, and Sergeant Porter. (ECF No. 35 at PageID 335.) He also adds Lieutenant Green as a Defendant but no longer names the Shelby County Sheriff's Department, Chief Hubbard, Officer Robinson, Officer Smith, Sergeant Harris, Sergeant Bennett, or Sergeant Woods. (*See id*.; *cf.* ECF Nos. 1 at PageID 1; 22 at PageID 229.)

The Screening Order informed Plaintiff that, if he filed a second amended complaint, the Court would consider it to be his "all-inclusive" pleading for PLRA screening purposes. (ECF No. 34 at PageID 330–31.) And so the Court respectfully **DIRECTS** the Clerk to modify the docket by: (1) removing the Shelby County Sheriff's Department, Chief Hubbard, Officer Robinson, Officer Smith, Sergeant Harris, Sergeant Bennett, and Sergeant Woods as Defendants; and (2) adding Lieutenant Green as a Defendant. Plaintiff seeks compensatory and punitive damages (ECF No. 35 at PageID 353, 354–57, 360–62, & 364), as well as injunctive relief (*id*. at PageID 363–64).

## BACKGROUND

Liberally construing the SAC, Plaintiff alleges claims for conspiracy (ECF No. 35 at PageID 334), unconstitutional conditions of confinement (*id*. at PageID 353–63), and retaliation (*id*. at PageID 338–52). Although Plaintiff alleges 21 "counts" of unconstitutional conduct, most of these counts are not stand-alone claims. Instead, Plaintiff explains that these factual allegations "are presented for the purpose of showing . . . an inference of punitive and retaliatory intent." (ECF No. 35 at PageID 347.)[1]

Plaintiff alleges that Defendants interrupted his sleep schedule (ECF No. 35 at PageID 344–45, 354–55, & 357), limited his access to outdoor recreation (*id*. at PageID 343–44, 352–53,

---

[1] *See also* ECF No. 35 at PageID 340 ("It is not my intent to argue that I have a right to a specific housing assignment but to show that . . . the intent behind my relocation to [segregation] was punitive in nature"); *id.* at PageID 351 ("For instance, the denial of access to a dayroom was a direct result of this punitively motivated move to [segregated housing] . . . as a retaliatory measure . . . ."); *id.* at PageID 350–51 ("This fact . . . is not intended to be used as an argument that I have a right to a 'perfect' grievance process, or even a right to a grievance process at all. This fact does, however, tend to exhibit . . . [that] [t]hese conditions were imposed upon me maliciously, punitively, and in retaliation for filing grievances, PREA complaints, and suits in federal court aimed at remedying . . . unconstitutional deprivations and conditions of confinement").

356–57, 360, & 363–64), deprived him of dayroom access (*id.* at PageID 341, 343, & 351), confiscated his therapeutic pillow (*id.* at PageID 348–49 & 364), and changed his housing assignment (*id.* at PageID 340–41 & 353). Rather than independent causes of actions, these allegations are support for his conspiracy, retaliation, and unconstitutional conditions of confinement claims.[2]

The Court next discusses the legal standards for bringing a prisoner complaint under the PLRA.

## **LEGAL STANDARDS**

**I.   Screening Requirements Under 28 U.S.C. § 1915A**

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). And in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement

---

[2] In its Screening Order, the Court dismissed many of these individual allegations for failure to state a claim for relief. (*See* ECF No. 34 at PageID 311–22.) And like Plaintiff's first pleadings, the SAC does not allege facts allowing the Court to infer plausibly that these allegations are independent violations of the Eighth Amendment. Nothing in the SAC alters the Screening Order's determinations on those issues. (*See* ECF No. 34 at PageID 311–18.)

to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations however "are not entitled to the assumption of truth," and if a plaintiff asserts legal conclusions in a complaint they "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

And Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555. But it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3.

Even so, courts screening cases will give slightly more deference to pro se complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). That said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612–13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.     Requirements to State a Claim Under 42 U.S.C. § 1983

Plaintiff now sues under 42 U.S.C. § 1983. To state a claim under that statute, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). For his claims to succeed, Plaintiff must satisfy these requirements.

## ANALYSIS

**I.     Plaintiff's Conspiracy Claims**

Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights. He claims that "[o]n all dates and times described herein, all tortfeasors and their co-conspirators did willfully and maliciously conspire and deprive me of my [constitutional] rights, privileges, and immunities." (ECF No. 35 at PageID 334–35.) But he does not identify any conduct by Defendants to support his conspiracy claims.

To state a claim for conspiracy, "a plaintiff must show that there is 'an agreement between two or more persons to injure another by unlawful action.'" *Sango v. Place*, No. 16-2095, 2016 WL 9413659, at *2 (6th Cir. Dec. 21, 2016) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). In other words, the plaintiff must show that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Robertson*, 753 F.3d at 622).

What is more, a plaintiff must plead a conspiracy claim under § 1983 with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Here Plaintiff's conspiracy allegations are vague, non-specific, and unsupported. All he alleges is that Defendants "did willfully and maliciously conspire" to deprive him of his constitutional rights. (ECF No. 35 at PageID 334.) This is not enough to state a conspiracy

claim under § 1983, and so his conspiracy allegations fail to state a claim for relief. On that basis, the Court **DISMISSES** his conspiracy claim.

## II.  Plaintiff's Unconstitutional Conditions of Confinement Claims

Plaintiff's unconstitutional conditions of confinement claims are extensive. First he claims that Defendant Green "authorized and implemented" Plaintiff's relocation to administrative segregation for ten and a half months (the "Segregation"). (ECF No. 35 at PageID 353.) Plaintiff alleges that this was "[a] punitive and retaliatory condition[] of confinement." (*Id.*) During that time, he was the only detainee housed there "for 'safety and security' purposes." (*Id.* at PageID 340–41.) He thus argues that "a reasonable inference can be drawn that [his] sudden relocation . . . was punitive in nature, and was intended to subject [him] to '23 and 1' lockdown, [with] no access to a dayroom area for the purpose of psychological relief from confinement to a cell, lack of access to a pod kiosk [for medical care purposes], and the denial of outside recreation." (*Id.* at PageID 341.)

All in all, Plaintiff claims that Defendants (1) denied him access to a dayroom (*id.* at PageID 338 & 351–52); (2) deprived him of outside recreation (*id.* at PageID 339 & 352)[3]; (3) interrupted his sleep by beating and kicking on his cell door in the middle of the night (*id.* at PageID 339 & 345)[4]; and (4) confiscated a blanket that he used as therapeutic pillow after

---

[3] Plaintiff identifies "[s]ix incidents of punitive deprivations of outside recreation." (ECF No. 35 at PageID 363). He describes these incidents in Counts 2 (*id.* at PageID 353), 11 (*id.* at PageID 355), 13 (*id.* at PageID 356), 15 (*id.* at PageID 357), 18 (*id.* at PageID 360), and 19 (*id.* at PageID 360.).

[4] Counts 3 through 7 of the SAC allege that many times Defendants Richardson, Chandler, and Johnson kicked on Plaintiff's cell door to deprive him of sleep. (ECF No. 35 at PageID 354). Counts 8, 9, and 10 describe other times when Defendants woke Plaintiff in the middle of the night. (*Id.* at PageID 354–55.)

correctional staff injured his neck in 2018 (*id*. at PageID 340) (collectively, the "Conditions"). Finally he claims that these Conditions were "not connected to any legitimate institutional security interest" (*id*. at PageID 343), but "were imposed upon [him] maliciously, punitively, and in retaliation for filing grievances, PREA complaints, and suits in federal court [to] remedy . . . conditions of confinement[.]"  (*Id*. at PageID 351.)  After reviewing the SAC, the Court finds that Plaintiff has alleged unconstitutional conditions of confinement claims sufficient to survive initial PLRA screening.[5]

The Fourteenth Amendment's due process clause protects pretrial detainees from "punish[ment] prior to an adjudication of guilt." *Thompson v. Cnty. of Medina,* 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  The Supreme Court explained in *Bell v. Wolfish* that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 441 U.S. at 539 (internal citations omitted).

So in other words, restrictions that amount to punishment may violate a pretrial detainee's substantive due process rights.  But a defendant does not violate a pretrial detainee's rights if the defendant has a legitimate governmental objective for imposing the restrictions or conditions. *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991).  Thus, a pretrial detainee can establish that a defendant subjected him to unconstitutional punishment by showing either (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a

---

[5] Of course, as this case proceeds, Plaintiff's evidentiary burden will increase.

7

restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020) (citing *Bell*, 441 U.S. at 535; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Plaintiff here does not allege an isolated incident or temporary deprivation. Indeed, he contends that Defendants consistently subjected him to deprivations for over ten months with no legitimate penological reason. For example, Plaintiff alleges that Defendants offered him an opportunity for outside recreation only ten times during Segregation. (ECF No. 35 at PageID 363.) And they allowed him only one day of recreation during his first 180 days in Segregation. (*Id*.) This Court has to accept that allegation as true. And, if true, it would arguably violate Plaintiff's due process rights.

What is more, after Plaintiff filed several grievances about staff harassment, Defendants allegedly confiscated as "contraband" his extra blanket (which he used as a therapeutic neck pillow for an injury). (*Id*. at PageID 349.) Also correctional officers entered his cell at night on at least seven occasions simply to wake or taunt him. (*Id*. at PageID 354 & 355.) And denying him social interaction or access to the dayroom for ten and a half months (*id*. at PageID 338 & 351–52), without a safety or security reason for doing so, violates Plaintiff's constitutional rights under *Bell*. *See Bell*, 441 U.S. at 539.

In sum, these claims allege unconstitutional conditions of confinement and survive screening. The SAC directly disputes that Defendants had any administrative or medical reasons for the Conditions. In fact, Plaintiff claims that the Conditions were not rationally related to a government purpose and that Defendants imposed the Conditions to punish him. *See J.H*., 951 F.3d at 717. Plus, Plaintiff describes much more than an isolated incident or temporary deprivation. (*See* ECF No. 35 at PageID 336–62.)

8

In the end, for initial screening purposes, the Court makes all inferences in Plaintiff's favor and he alleges that Defendants intended to punish him. As a result, Plaintiff has pleaded that the Conditions were arbitrary and punitive. The Court therefore finds that Plaintiff's unconstitutional conditions of confinement claims against Defendants will **PROCEED**.

### III. Plaintiff's Retaliation Claims

Plaintiff alleges that Defendants put him in Segregation as retaliation for engaging in protected activity. He argues that Defendants had "no valid security interest" in moving him to Segregation because "if the stated reason on the order, which was 'safety and security' were the actual reason for my administrative segregation . . . then the proper housing assignment would have been to a protective custody pod." (ECF No. 35 at PageID 340.) He further alleges that Defendant Green, as the "duly designated designee" of Chief Jailer Hubbard, authorized the Segregation to punish him for filing "grievances, PREA complaints, and suits in federal court." (*Id*. at PageID 336 & 351.) And that "[t]he intent behind" his relocation was "not for the officially stated reason on the housing assignment order endorsed by Lieutenant Green." (*Id*. at PageID 340–41; *see also id*. at PageID 347.) He claims also that the "temporal proximity" between (1) his relocation to Segregation in November 2019, and (2) his early November 2019 lawsuits over the Conditions, supports an "inference" of punitive and retaliatory intent. (*Id*. at PageID 340–341, 361, & 367 n.3.)

The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation based on a prisoner's exercise of his First Amendment rights violates the Constitution"). A retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the

9

> adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  What is more, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The First Amendment protects one's right to file a grievance.  *Hill*, 630 F.3d at 472.  And accepting Plaintiff's allegations as true, he sufficiently alleges that he engaged in protected activity by filing grievances, PREA complaints, and federal lawsuits involving Defendants.  What is more, he alleges that Defendants changed his housing assignment and imposed unconstitutional conditions of confinement because of this constitutionally protected conduct.  It is likely that these adverse actions would deter a person of ordinary firmness from continuing to file grievances, complaints, and lawsuits.  With all this in mind, the Court finds that Plaintiff's retaliation claims against Defendants will **PROCEED**.

## IV.   Plaintiff's State Law Claim

It is hard to discern what state cause of action, Plaintiff seeks to assert.  If his allegations of "civil rights intimidation and retaliation" (ECF No. 35 at PageID 336, 339, 357–61, & 367) assert a state law claim at all, the Court will construe these allegations as a claim for malicious harassment under Tenn. Code Ann. § 4-21-701.[6]  First, he claims that Defendant Young harassed

---

[6] If Plaintiff seeks to bring criminal charges against these Defendants, of course, he cannot do so—the "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors."  *Wortman v. Tennessee*, No. 3:20-cv-00156, 2020 WL 1666601, at *6 (M.D. Tenn. Apr. 3, 2020) (quoting *Tunne v. U.S. Postal Serv.*, No. 5:08CV-189-R, 2010 WL 290512, at *1 (W.D. Ky. Jan. 21, 2010); *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004)).  What is more, the party initiating criminal charges is the State itself, not an individual.

him by threatening to confiscate all of his possessions because he had sued Young in federal court.  (*Id.* at PageID 367 & 357.)  Next he alleges that Defendant Porter and a disciplinary panel at the Jail harassed him and engaged in "civil rights intimidation."  (*Id.* at PageID 359.)  This is because Defendant Porter "falsely substantiate[d] a SCCJC policy violation" against Plaintiff, causing a disciplinary panel to find that Plaintiff had made an intentionally false statement during a disciplinary proceeding.  (*Id.* at PageID 358.)  As a result, the panel sent Plaintiff to detention and stopped serving him a dietary sack-lunch, causing "mild starvation."  (*Id*. at PageID 336, 339, 358–60).  And third, Plaintiff alleges that Defendant Martin harassed and intimidated him after she learned that Plaintiff had sued her in federal court.  (*Id*. at PageID 360–61.)

Presumably, Plaintiff seeks to bring a malicious harassment claim against these Defendants under Tenn. Code Ann. § 4-21-701.  To do so, he must allege that "a person acted maliciously . . . [and] unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person."  *Washington v. Robertson Cnty.*, 29 S.W.3d 466, 473 (Tenn. 2000).  What is more, Plaintiff must also allege that his race, color, religion, ancestry, or national origin motived Defendants' conduct.  *Jackson v City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *8 (Tenn. Ct. App. Aug. 22, 2016).

Here Plaintiff does not allege that his race, color, religion, ancestry, or national origin motivated these Defendants.  Even still verbal abuse or harassment by prison officials (or other prisoners) is not an Eighth Amendment violation.  *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" cannot constitute cruel and unusual punishment); *Ivey v. Wilson*,

11

832 F.2d 950, 954–55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment"). And prisoners do not have a due process right to be free from false disciplinary charges either. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)). In sum Plaintiff's allegations do not amount to a claim for malicious harassment under Tennessee law.

Because Plaintiff fails to state a claim for malicious harassment, the Court **DISMISSES** his state law claims.

### V. Plaintiff's Claims Against the Disciplinary Panel Members

Once again, this Court faces a hard task to discern what claim Plaintiff is trying to assert against members of the disciplinary panel. Plaintiff does not name these members individually, he only refers to them as a group. This is a problem. If Plaintiff sues them under § 1983, his claims fail. Plaintiff alleges that "four members of the disciplinary panel" (ECF No. 35 at PageID 351 & 359), "made an intentionally false finding" that he was guilty of offering false statements during a disciplinary hearing. (*Id*. at PageID 339, 358 & 359.) And the disciplinary panel gave him ten days of disciplinary detention as punishment. (*Id*. at PageID 358.)

But a plaintiff cannot bring collective liability claims under § 1983. This is because, to be liable under § 1983, each defendant must be personally involved in the alleged constitutional deprivation. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). A group of people, such as a "disciplinary panel," is not a "person" subject to suit under to § 1983. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding that "medical departments are not 'persons' under § 1983"); *Arty v. Wilson Cnty. Jail*, No. 19-cv-0309, 2019 WL 4748321, at *2

(M.D. Tenn. Sept. 30, 2019).  So without identifying the officers who caused the harm by name, Plaintiff cannot state a claim for relief.  In the end, the Court **DISMISSES** Plaintiff's claims against the disciplinary panel.

## PLAINTIFF'S OTHER PENDING MOTIONS

Before amending his complaint, Plaintiff filed "Omnibus Motion V" which asked the Court to revise his respondeat superior claims and his demands for injunctive relief.  (ECF No. 32.)  Because the SAC replaced Plaintiff's previous claims here (*see* ECF No. 34 at PageID 330–31; *see also* ECF No. 35), the Court **DENIES** this motion as moot.

Plaintiff also moved the Court to serve process.  (ECF No. 33.)  As explained below, the Court **DENIES** this motion in part and **GRANTS** it in part.

And after filing his SAC, Plaintiff moved to compel discovery.  (ECF Nos. 36 & 37.)  He says that he requested documents from Defendants and that they failed to respond.  (ECF Nos. 36 at PageID 369; 37.)  But when Plaintiff requested documents from Defendants and moved to compel discovery, his complaint was still in the screening stage.  What is more, the Clerk has not issued process yet.  So under the Federal Rules of Civil Procedure, Plaintiff could not properly conduct discovery yet.  As a result, the Court **DENIES** Plaintiff's motions for discovery.  After Defendants have received summons and appeared here, the Court will hold a scheduling conference to discuss the discovery process.

## AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).  In fact, the Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA.  *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019).  And the Court

has also stated that "[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend." *Id*. (quoting *Brown*, 415 F. App'x at 614).

The Court already granted Plaintiff the opportunity to amend his complaint and rescreened it under the PLRA. The Court thus finds that it should not give Plaintiff another opportunity to amend.

## CONCLUSION

For all the reasons explained above, the Court **DISMISSES WITH PREJUDICE** for failure to state a claim Plaintiff's (a) conspiracy claims; (b) state law claims; and (c) his claims against the disciplinary panel.

The Court finds also that Plaintiff's claims of unconstitutional conditions of confinement and retaliation may **PROCEED** against Sergeant Richardson, Sergeant Cleaves, Officer Chandler, Officer Johnson, Officer Dance, Officer J. Robertson, Officer Young, Officer Branch, Sergeant Martin, Sergeant Porter, and Lieutenant Green.

The Court **DENIES** leave to amend the second amended complaint (ECF No. 35) and **DENIES** Plaintiff's Omnibus Motion V (ECF No. 32). The Court further **DENIES** Plaintiff's discovery motions. (ECF Nos. 36 & 37.) But the Court **GRANTS IN PART** his motion for service of process. (ECF No. 33.) The Court respectfully **DIRECTS** the Clerk to issue process for Defendants Richardson, Cleaves, Chandler, Johnson, Dance, Robertson, Young, Branch, Martin, Porter, and Green and deliver that process to the U.S. Marshal for service. The U.S. Marshal should serve Defendants under Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and 4.04(10) by registered or certified mail, or personally if mail service is not effective. The United States will advance all costs of service.

The Court further **ORDERS** that Plaintiff serve a copy of every document he files here on the attorneys for Defendants or on the Defendants personally if they are unrepresented. Plaintiff must include a certificate of service on every document he files.  And he should familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[7]  The Court reminds Plaintiff that he must promptly notify the Clerk in writing of any change of address or extended absence.  Plaintiff's failure to comply with these requirements, or any other order of the Court, may lead to the dismissal of this case without further notice.

**SO ORDERED**, this 31st day of August, 2021.

       s/Thomas L. Parker
       THOMAS L. PARKER
       UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff can get a copy of the Local Rules from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.